JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CHARLES BECK, individ. and as Administrator or ESTATE OF SHIRLEY LEIBENGUTH, deceased

## DEFENDANTS
LEHIGH COUNTY, et al.

**(b)** County of Residence of First Listed Plaintiff    Lehigh County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lehigh County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James J. McEldrew, III, Esq., Daniel Purtell, Esq., John Coyle, Esq.
McEldrew Young, 123 S Broad St., #2250, Phila, PA 19109
215-545-8800

Attorneys *(If Known)*
Unknown.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* | |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.   1983
Brief description of cause:
Civil rights violation - nursing home

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
07/03/2019

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ **Charles Beck, 930 East Lexington Street, Allentown, PA 18103** _____

Address of Defendant: Lehigh County,17 S. 7th St, Lehigh County PA 18101 and Cedarbook Sr. Care & Rehab aka Cedar Brook Nursing Homes, 350 S. Cedarbrook Rd, Allentown, PA 18104

Place of Accident, Incident or Transaction: _____ **Cedarbrook Senior Care and Rehabilitation** _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ✔

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ✔

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ✔

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ✔

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __7/03/2019__   _____   __36411__
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☑ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __James J. McEldrew, III, Esq.__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

JUL - 3 2019

DATE: __07/03/2019__   _____   __36411__
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| CHARLES BECK, individ. and as Admin. of ESTATE OF SHIRLEY LEIBENGUTH, deceased | : | CIVIL ACTION |
| v. | : | |
| LEHIGH COUNTY, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                 ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x )

| | | |
|---|---|---|
| 7/03/2019 | James J. McEldrew, III, Esq. | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-8800 | 215-545-8805 | jim@mceldrewlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES BECK, Individually and as Administrator of the Estate of SHIRLEY LIEBENGUTH,<br><br>Plaintiff,<br><br>v.<br><br>LEHIGH COUNTY, as owner and operator of CEDARBROOK SENIOR CARE AND REHABILITATION a/k/a Cedar Brook Nursing Homes a skilled nursing facility<br><br>GOOD SHEPERD REHABILITATION NETWORK d/b/a GS Lehigh a/k/a The Good Shepherd Home a/k/a Good Shepherd Home Foundation<br><br>LW CONSULTING, INC.<br><br>JOHN DOE COMPANIES (1-10) (fictitious designation representing the as yet unknown individual(s), partnerships, corporations, and/or other business entities, individually, jointly, severally and/or in the alternative affiliated or connected in any way with Plaintiff's care and/or otherwise responsible for Plaintiff's injuries and<br><br>Defendants. | Civ. No.: |

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Charles Beck, Individually and as Administrator of the Estate of Shirley Liebenguth, by and through his undersigned counsel, Jim McEldrew, Esquire, Daniel Purtell, Esquire; John L. Coyle, Esquire; and the law firm of McEldrew Young., and files this Complaint against Defendant Lehigh County, as owner and operator of Cedarbrook Senior Care and Rehabilitation a/k/a Cedar Brook Nursing Homes, a skilled nursing facility, and Defendant Good Shepherd Rehabilitation Network d/b/a GS Lehigh a/k/a The Good Shepherd

Home a/k/a Good Shepherd Home Foundation and/or Defendant, LW Consulting, Inc. for unlawful deprivations of Plaintiff's federal rights guaranteed by the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. § 1396r, *et al.*; the implementing regulations found at 42 C.F.R. § 483, *et al*, enforceable under 42 U.S.C. § 1983, and negligence and in support thereof, avers as follows:

### JURISDICTION AND VENUE

1.      This instant case asserts wrongful death and survival actions pursuant to 42 U.S.C. § 1983 to remedy deprivation of rights guaranteed by the Omnibus Budget Reconciliation Act 1987, the Federal Nursing Home Reform Act; and the Federal Nursing Home Regulations, as found at 42 C.F.R. §483.

2.      As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C § 1331.

3.      As the Court has original jurisdiction over Plaintiff's Section 1983 claim pursuant to 28 U.S.C. §1367, the Court has supplemental jurisdiction over Plaintiff's state law claims as they are so related to the claims in this action that fall within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## JURY DEMAND

5.      Plaintiff, Charles Beck, individually and as administrator of the Estate of Shirley Liebenguth, deceased, demands a trial by jury.

## PARTIES

6.      Plaintiff, Charles Beck, is an adult individual who resides at 930 East Lexington Street, Allentown, PA 18103.

7.      Charles Beck is the brother of Shirley Liebenguth.

8.      Charles Beck was appointed the Administrator of the Estate of Shirley A. Liebenguth, file number 2019-1141, on June 21, 2019 by the Register of Wills of Lehigh County.

9.      Charles Beck brings this action as the personal representative of decedent, Shirley Liebenguth, on his own behalf and on behalf of all those entitled by law to recover damages for the wrongful death of decedent Shirley Liebenguth.

10.      The only wrongful death beneficiaries entitled to recover wrongful death damages for the death of Shirley Liebenguth are as follows:

      a.   Charles Beck, brother – listed above.

      b.   Thomas Beck, brother – 1607 Tweed Ave., Allentown PA 18103.

11.      Defendant Lehigh County, Pennsylvania, is a governmental agency with its government offices located at 17 South 7th Street, Lehigh County, Pennsylvania, 18101.

12.      Cedarbrook, Senior Care and Rehabilitation, a/k/a Cedar Brook Nursing Homes ("Cedarbrook") is a skilled nursing facility with its principal place of business located at 350 South Cedarbrook Road, Allentown, PA 18104.

13.      Defendant, Lehigh County owns and operates greater than five percent (5%) of

Cedarbrook.

14.     As such, at all times relevant hereto, Cedarbrook is a governmental agency acting under the color of state law.

15.     At all times relevant hereto, Cedarbrook operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

16.     Accordingly, Cedarbrook is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

17.     At all times relevant hereto, Cedarbrook operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

18.     At the time of the incidents pled herein, Cedarbrook was acting under the control of Lehigh County, and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

19.     At all times relevant hereto, Plaintiff was a recipient of Medicare benefits pursuant to 42 U.S.C.A. §1395, *et seq.*

20.     Defendant, Good Shepherd Rehabilitation Network, d/b/a GS Lehigh, a/k/a The Good Shepherd Home, a/k/a Good Shepherd Home Foundation, ("Good Shepherd") is a skilled nursing facility management company with its principal place of business located at 850 South Fifth Street, Allentown, PA 18101.

21.     Defendant, LW Consulting, Inc., ("LW Consulting") is a skilled nursing facility management company with its principal place of business located at 5925 Stevenson Ave 2nd, Harrisburg, PA 17112.

22.     At all times relevant hereto, Good Shepherd and/or LW Consulting contracted with Cedarbrook to manage and/or provide management services to Cedarbrook.

23.     Defendant, John Doe Companies and Partnerships (1-10), fictitious names, the real names being unknown, providing management, nursing, professional and/or staffing services to Defendant, Cedarbrook, Good Shepherd and/or LW Consulting.

## STATEMENT OF CLAIMS

24.     At all times relevant hereto, Cedarbrook operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

25.     At all times relevant hereto, Cedarbrook, held itself out as a professional in the field of adult nursing care, with the expertise necessary to maintain the health and safety of residents such as Shirley Leibenguth.

26.     At all times relevant hereto, Cedarbrook, promoted the fact that "Cedarbrook is a skilled nursing and rehabilitation facility that meets federal criteria for Medicaid and Medicare reimbursement for nursing care."

27.     At all times relevant hereto, Cedarbrook was acting independently and by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

28.     Plaintiff's Counsel requested the nursing chart for Shirley Liebenguth for over eight (8) months – only to receive a partial chart that is missing crucial records.

29.     As of the date of this pleading Defendant's have only provided the medical chart for the limited period of June and July of 2017. The records from this limited time period omit critical records.  It is alleged that the complete medical chart would contain additional relevant information and evidence of Defendants' individual and/or collective negligence. Defendants failure to provide a full medical chart continue to prejudice Plaintiff's Counsel's ability to evaluate

and plead the present claims.

30.     The June 15, 2017 PT Evaluation & Plan of Treatment documents the following:

    a.   Total dependence with transfers.

    b.   Assistance with basic mobility in bed.

    c.   Total dependence with sit to stand, toilet transfer and/or chair to bed transfer.

31.     The July 2017 Order Summary report documents an order for mechanical lift with transfers.

32.     Within the July 2017 Treatment Administration Record (TAR) Ms. Lienbenguth was noted to have "difficulty walking" and morbid obesity.

33.     It appears that on July 5, 2017 all documented care was provided by Laurie Kovalchick, LPN.

34.     The previous MDS documentation was not provided by Defendant so Plaintiff's Counsel is unable to provide a comparison to previous similar documentation – it is alleged that when the necessary documentation is obtained it will contain additional evidence of the Defendants culpability.

35.     At 0600 hours on July 5, 2017 it was noted that while a CNA was attempting to change, transfer, adjust and/or otherwise move Shirley, without sufficient care, assistance and/or training, Shirley was dropped to the floor striking her face and knees.

36.     It is alleged that this fall occurred due to the CNA's lack of training, instruction, supervision and/or the failure to provide assistance by the individual and/or collective Defendants.

37.     Shirley was noted to have an injury to her nose and complaints of bilateral knee

pain.

38.     As a result, Shirley was transported to St. Luke Hospital via Cetronia Ambulance.

39.     Upon admission to St. Luke's at 0636 hours, it was noted Ms. Liebenguth "rolled out of bed while she was being changed."

40.     While at St. Luke's Shirley was diagnosed with bilateral femur fractures, suffered cardiac arrest, went into code, and required intubation before regaining spontaneous circulation.

41.     After the initial code, Shirley was awake, responding to verbal commands and able to open her eyes.

42.     Thereafter Ms. Liebenguth coded and was resuscitated on numerous occasions, in the presence of her family, before she was pronounced at 1605 hours.

43.     The death certificate lists complications of bilateral femur fracture as the cause of death.

44.     The July 5, 2017 MDS – presumably performed after Shirley was discharge to St. Luke's - documented Ms. Liebenguth to be 64 inches tall and weigh 277 pounds and suffer from diabetic neuropathy.

45.     Additionally, the same MDS documented Shirley to require "extensive assistance" consisting of "staff providing weight-bearing support" for all activity.

46.     Additionally, it was documented that Shirley exhibited "total dependence" for any "transfer".

47.     Finally, the MDS identifies that Shirley suffered a fall with major injury.

48.     The July 5, 2017 MDS was completed by Cindy Ruhf, RN, BSN, RNAC.

49.     As a result of the substandard care received by Ms. Liebenguth from Cedarbrook Good Shepherd and/or LW Consulting, as well as their individual and/or collective employees,

agents, staff and/or ostensible agents, Ms. Liebenguth sustained a bilateral femur fractures, associated pain and suffering, numerous code events with resuscitation, intubation and ultimately death.

50.     Cedarbrook, Good Shepherd and/or LW Consulting, as well as their individual and/or collective employees, agents, staff and/or ostensible agents, had a duty to ensure that all persons providing care within Cedarbrook's facility were competent, adequately trained, adequately supervised and adequately assisted to provide that care.

51.     At all times material hereto, Cedarbrook, Good Shepherd and/or LW Consulting, as well as their individual and/or collective employees, agents, staff and/or ostensible agents, owed a duty to protect residents such as Ms. Liebenguth, against the hazards he encountered and the harm he suffered while residing at Cedarbrook's facility.

52.     Cedarbrook, Good Shepherd and/or LW Consulting, as well as their individual and/or collective employees, agents, staff and/or ostensible agents, had a duty to formulate and enforce adequate rules and policies to ensure quality care for residents such as Ms. Liebenguth.

## ALLEGATIONS AS TO INSUFFICIENT STAFFING

53.     As published on Cedarbrook's website, they are a Medicare facility that is required to comply with federal standards, including but not limited to, setting and maintaining staffing levels to the aggregate acuity level of the patients within their facility.

54.     Throughout Ms. Liebenguth's stay at Defendants' Facility, Defendants intentionally and grossly understaffed the Facility, and the understaffing caused a significant decrease in care that should have been provided by defendants to Ms. Liebenguth and lead to her injuries in this case.

55.     Nursing facilities, like Cedarbrook, are required to submit Medicare annual reports that identify, among other things, the patient census and the hours of respective clinical staff

56.     By dividing the clinical hours worked by the patient census it is possible to determine how many hours the nursing facility paid for each category of direct caregivers per resident per day for the time period covered by that particular cost report.

57.     This number is referred to as the "HPPD".

58.      According to CMS expectations, during the 24-month period leading up to and preceding Ms. Liebenguth's passing, Defendants failed to provide the level of staffing necessary to meet the needs of their residents.

59.     During 2015 Cedarbrook understaffed their RN's an average of 30% and their CNA's an average of 22% - resulting in a net savings of $2,472,083.

60.     During 2016 Cedarbrook again understaffed their RN's an average of 30% and their CNA's an average of 22% - resulting in a net savings of $2,663,257.

61.     During 2017 Cedarbrook understaffed their RN's an average of 32% and their CNA's an average of 14% - resulting in a net savings of $2,912,156.

62.     However, once more accurate staffing information is made available to Plaintiff the above intentional staffing shortfalls and the associated savings will likely increase.

63.      Plaintiff alleges that Cedarbrook, Good Shepherd and/or LW Consulting, jointly and/or separately, exercised control over the operation and management of Defendants' Facility prior to and during Ms. Liebenguth's period of residency therein, including but not limited to, the creation, setting, funding and/or implementation of budgets; the monitoring of resident acuity levels; the monitoring of staffing levels; control over resident admissions and

discharges; and control over the number of hours of direct care provided to the residents of Defendants' Facility by RNs, LVNs, and CNAs.

64. Plaintiff alleges that each of these managerial and operational functions were intentional and had a direct impact on the amount and quality of care delivered to Ms. Liebenguth and were taken in furtherance of operational and managerial objectives.

65. Plaintiff alleges that Cedarbrook, Good Shepherd and/or LW Consulting engaged in a systematic process of ensuring Cedarbrook maintained the highest acuity levels possible while failing to provide sufficient and qualified staff to meet the individual needs of their residents during Ms. Liebenguth's period of residency therein.

66. Plaintiff alleges that this understaffing, although profitable for Cedarbrook, Good Shepherd and/or LW Consulting, directly resulted in their failure to provide the necessary and basic services Ms. Liebenguth needed in order to prevent the fall that caused her death.

67. Such understaffing created a perfect formula for not having proper assessments, supervision, monitoring, training, assistance and implementation of necessary medical and/or nursing treatment that would have prevented Ms. Liebenguth's horrific and untimely passing.

**COUNT I: DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE VIA 42 U.S.C. § 1983 SURVIVAL ACTION PLAINTIFF VS. DEFENDANT ALLEGHENY COUNTY d/b/a CEDARBROOK SENIOR CARE AND REHABILITATION d/b/a CEDARBROOK NURSING HOME**

68. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

69.     Cedarbrook is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

70.     Cedarbrook is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

71.     Cedarbrook is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

72.     The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

73.     Upon information and belief, Cedarbrook, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Cedarbrook failed to implement and follow appropriate custom and policies and/or, in the alternative, that Cedarbrook had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

74.     Cedarbrook, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

        a.     By failing, as a custom and policy, to promote the care of residents, including Ms. Liebenguth, in a manner and in an environment that maintained or enhanced her dignity, as required by 42 C.F.R. § 483.15 and 42 U.S.C. § 1396r(b)(1)(A);

        b.     By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents,

        including Ms. Liebenguth, as required by 42 C.F.R. § 483.20 and 42 U.S.C. § 1396r(b)(2)(A);

c.      By failing, as a custom and policy, to provide residents, including Ms. Liebenguth, the necessary care and services to allow him to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(3)(A);

d.      By failing, as a custom and policy, to provide residents, including Ms. Liebenguth, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(e) and 42 U.S.C. § 1396r(b)(3)(A);

e.      By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care, including Ms. Liebenguth, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

f.      By failing, as a custom and policy, to conduct an assessment of a patient or resident, including Ms. Liebenguth, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(ii);

g.      By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising Ms. Liebenguth's Plan of Care, as required by 42 U.S.C. § 1396r(b)(3)(D);

h.      By failing, as a custom and policy, to ensure that patients or residents, including Ms. Liebenguth, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(4)(ii);

i.      By failing, as a custom and policy, to ensure that an ongoing program, directed by a qualified professional, of activities designed to meet the interests and the physical, mental and psycho-social wellbeing of each resident or patient,

including Ms. Liebenguth, was implemented, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(4)(A)(v);

j.  By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

k.  By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Liebenguth, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.30 and 42 U.S.C. § 1396r(b)(4)(C);

l.  By failing, as a custom and policy, to maintain clinical records on all residents, including Ms. Liebenguth, including but not limited to the Plans of Care and resident's risk assessments, as required by 42 C.F.R. § 1396r(b)(6)(C);

m.  By failing, as a custom and policy, to ensure that Cedarbrook was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Ms. Liebenguth, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.75, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(C);

n.  By failing, as a custom and policy, to ensure that the administrator of Cedarbrook met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

o.  By failing, as a custom and policy, to ensure that Cedarbrook was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Liebenguth, and in operating such a facility as Cedarbrook, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

p.  By failing, as a custom and policy, to ensure that Cedarbrook's administrator and director of nursing properly monitored and supervised subordinate staff,

thereby failing to ensure the health and safety of residents
or patients, including Ms. Liebenguth, in derogation of 42
C.F.R. § 483.75 and 42 U.S.C. § 1396r(a)(W).

75.    In particular, and as further evidence that the Cedarbrook's failures were systemic and part of a custom and policy, the Facility has been cited numerous times between January 18, 2013 and present for regulatory violations directly relevant to the allegations in Plaintiff's Complaint.[1] The regulations at issue amplify the mandates of the FNHRA.

76.    The aforementioned violations indicate that Cedarbrook, as well as the above plead intentional staffing shortages, as a policy and/or custom were deliberately indifferent to Ms. Liebenguth's needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

77.    The repeated and systemic failures in the preceding Paragraph, combined with the failures identified in Paragraphs 60(a)-(p) demonstrate that Cedarbrook, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Cedarbrook failed to implement and follow appropriate customs and policies and/or, in the alternative, that Cedarbrook had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

78.    As a proximate result of Cedarbrook's actionable derogation of its regulatory and statutory responsibilities as above-described, Ms. Liebenguth was injured as previously referenced and endured pain, suffering and distress as a result of the poor care and treatment which allowed him to suffer harm as described herein.

---

[1] Plaintiff has not attached the aforementioned citations as an exhibit due to their size.  These citations are available at the Pennsylvania Department of Health's website at: http://sais.health.pa.gov/commonpoc/Content/PublicWeb/ltc-survey.asp?Facid=364902&PAGE=1&NAME=JOHN+J+CEDARBROOK+REGIONAL+CENTER+SCOTT+TOWNSHIP&SurveyType=H&COUNTY=ALLEGHENY

79.     As such, Ms. Liebenguth suffered and her estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988:

      a.    Pain, suffering, inconvenience, anxiety and nervousness of Ms. Liebenguth, as related to the injuries that he suffered as a result of the negligent treatment and care rendered by Defendant until the time of his death;

      b.    Hospital, medical, surgical and nursing expenses incurred on Ms. Liebenguth; and,

      c.    Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff Charles Beck, Individually and as Executor of the Estate of Shirley Liebenguth, demands compensatory and consequential damages from the Defendant Lehigh County, as owner and operator of Cedarbrook Senior Care and Rehabilitation d/b/a Cedarbrook Nursing Homes, a skilled nursing facility in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT II: DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE VIA 42 U.S.C. § 1983
### WRONFUL DEATH
### PLAINTIFF VS. DEFENDANT ALLEGHENY COUNTY d/b/a CEDARBROOK SENIOR CARE AND REHABILITATION d/b/a CEDARBROOK NURSING HOME

80.     All of the preceding Paragraphs of this Complaint are incorporated, as if set forth at length herein.

81.     As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress and death as a result of the poor care and treatment he received before dying on July 5, 2017.

82.     As such, Plaintiff has suffered, and is entitled to recover the following damages,

as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988:

    a.    He/They have expended money for surgical, nursing and hospital expenses related to the death of Ms. Liebenguth;

    b.    He/They have expended money for funeral and Estate expenses because of the death of Ms. Liebenguth;

    c.    He/They have been denied, and have forever lost the services, assistance, guidance, counseling, companionship of society of Ms. Liebenguth; and,

    d.    He/They have been, and will forever be, deprived of the financial support and all pecuniary benefits which they would have received from Ms. Liebenguth.

WHEREFORE, the Plaintiff, Charles Beck, Individually and as Executor of the Estate of Shirley Liebenguth, demands compensatory and consequential damages from the Defendant Allegheny County, as owner and operator of Cedar Brook Senior Center & Rehabilitation d/b/a Cedarbrook Nursing Homes, a skilled nursing facility in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT III – NURSING HOME NEGLIGENCE
## SURVIVAL ACTION PURSUANT TO 42 PA.C.S. §8302
## PLAINTIFF v. DEFENDANT LEHIGH COUNTY d/b/a CEDARBROOK SENIOR CENTER AND REHABILITATION d/b/a CEDARBROOK NURSING HOME, DEFENDANT GOOD SHEPHERD REHABILITATION NETWORK d/b/a GS LEHIGH a/k/a THE GOOD SHEPHERD HOME a/k/a GOOD SHEPHERD HOME FOUNDATION, DEFENDANT LW CONSULTING, INC. and/or DEFENDANT JOHN DOE COMPANIES (1-10)

83.    Plaintiff hereby incorporates the above referenced paragraphs of the within Complaint as if set forth more fully at length herein.

84.    Plaintiff brings this Count, Survival Action, pursuant to 42 Pa.C.S. §8302, with claims for all available damages, on behalf of the Estate of Shirley Liebenguth.

85.     The aforementioned incident was caused by the willful misconduct, recklessness, negligence and carelessness of Defendants, acting by and through their respective individual and/or collective employees, servants, agents, ostensible agents and/or work persons, and consisted, *inter alia*, of the following:

a.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper patient assessment;

b.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper fall protections;

c.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper patient transfers;

d.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure the safe completion of ADL's, including but not limited to, changing clothes, adult diapers, and/or bed sheets etc.;

e.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper physical assistance for clinical staff to safely complete ADL's, including but not limited to, changing clothes, adult diapers, and/or bed sheets etc.;

f.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing;

g.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing;

h.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required by patient acuity;

i.   Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required to ensure safe completion of ADL's, including but not limited to, changing clothes, adult diapers, and/or bed sheets etc.;

j. Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required to ensure safe fall protection;

k. Failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required to ensure safe patient transfers;

l. Causing, allowing and/or failing to prevent physical injury to Shirley Liebenguth,

m. Failing to provide proper fall precautions,

n. Failing to provide proper patient assessment,

o. Failing to ensure and/or provide safe completion of ADL's, including but not limited to, changing clothes, adult diapers, and/or bed sheets etc.;

p. Failing to ensure and/or provide safe patient transfers

q. Failing to ensure proper and necessary staffing to prevent injury to Shirley Liebenguth, and thereby causing said injury,

r. Failing to ensure proper and necessary training to prevent injury to Shirley Liebenguth, and thereby causing said injury,

s. Systematic and ongoing failure to properly supervise, monitor, observe, and assess the Plaintiff's decedent's medical condition and/or physical capabilities;

t. Failure to address poor mobility with corresponding interventions and/or nutritional supplements;

u. failure to transfer Plaintiff's decedent to the hospital for emergent care in a timely fashion;

v. failure to supervise medical care rendered to Plaintiff's decedent;

w. failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychological well-being of Plaintiff's decedent;

x. ongoing failure to attend to Plaintiff's decedent;

y. ongoing failure to hire and train appropriate and competent medical and nursing personnel to properly monitor, supervise and/or treat the Plaintiff's decedent's medical condition;

z. ongoing failure to hire sufficient number of trained and competent medical and nursing personnel who knew how to meet the decedent's medical needs;

aa. ongoing retention of and assignment of unfit, unqualified and incompetent medical and nursing personnel, who directly caused the death of Plaintiff's decedent;

bb. ongoing failure to provide 24-hour nursing services from enough qualified medical and nursing personnel to meet the total nursing needs of Plaintiff's decedent;

cc. negligently allowing improperly trained staff to provide basic care and monitoring of Plaintiff's decedent;

dd. ongoing failure to provide sufficient numbers of staff to meet the Plaintiff's decedent's fundamental care needs, including adequate supervision during ADL's and/or patient transfers leading to increased fall risks, and

ee. violation of rules, regulations and statutes as plead above and further developed during discovery.

86.     As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, Plaintiff's decedent, Shirley Liebenguth, was caused to lose her life.

87.     As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, Plaintiff's decedent was caused to suffer, *inter alia*, the injuries described above and contained within medical records, overwhelming and extreme physical pain and agony, mental anguish, severe emotional pain and suffering, and premature death on July 5 2017.

88.     Defendants', individually and/or collectively, failure to exercise reasonable care as alleged above comprised outrageous conduct under the circumstances, manifesting a wanton and reckless disregard of the rights of Plaintiff's decedent.

89.     Defendant, Lehigh County's role in the ownership and operation of Cedarbrook is a proprietary function of the County and not a governmental function.  Therefore, Lehigh County is not immune from suit under the Pennsylvania Political Subdivision Tort Claims Act.

WHEREFORE, the Plaintiff, Charles Beck, Individually and as Executor of the Estate of Shirley Liebenguth, demands compensatory and consequential damages from the Defendant Allegheny County, as owner and operator of Cedar Brook Senior Center & Rehabilitation d/b/a Cedarbrook Nursing Homes, a skilled nursing facility in excess of Seventy-Five Thousand

Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

**COUNT IV– NURSING HOME NEGLIGENCE**
**WRONGFUL DEATH PURSUANT TO 42 PA.C.S. §8301**
**PLAINTIFF v. DEFENDANT LEHIGH COUNTY d/b/a CEDARBROOK SENIOR**
**CENTER AND REHABILITATION d/b/a CEDARBROOK NURSING HOME,**
**DEFENDANT GOOD SHEPHERD REHABILITATION NETWORK d/b/a GS**
**LEHIGH a/k/a THE GOOD SHEPHERD HOME a/k/a GOOD SHEPHERD HOME**
**FOUNDATION, DEFENDANT LW CONSULTING, INC.**
**and/or DEFENDANT JOHN DOE COMPANIES (1-10)**

90. Plaintiff hereby incorporates the above referenced paragraphs of the within Amended Complaint as if set forth more fully at length herein.

91. Plaintiff brings this Count, a Wrongful Death Action, with all available damages, pursuant to 42 Pa.C.S. §8301.

92. The aforementioned incident was caused by the willful misconduct, actual malice, negligence and carelessness of Defendants, individually and/or collectively acting by and through its employees, servants, agents, ostensible agents and work persons, and consisted, inter alia, as plead in paragraph 85 (a) through (ee) above.

93. As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and/or collectively, Plaintiff's decedent, Shirley Leibenguth was caused to lose his life.

94. As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and/or collectively, resulting in the death of Plaintiff's decedent, the beneficiaries described above were caused to lose the pecuniary contributions they could have expected to receive from the decedent and were caused to lose the pecuniary value of services, financial support, society, familial relationship and comfort of the Plaintiff's decedent, his sister Shirley Leibenguth.

95. As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and/or collectively, resulting in the death of Plaintiff's decedent, the beneficiaries described above have lost the support, services, society, and comfort of Plaintiff's decedent, his sister Shirley Leibenguth.

96. Defendant, Lehigh County's role in the ownership and operation of Cedarbrook is a proprietary function of the County and not a governmental function.  Therefore, Lehigh County is not immune from suit under the Pennsylvania Political Subdivision Tort Claims Act.

WHEREFORE, the Plaintiff, Charles Beck, Individually and as Executor of the Estate of Shirley Leibenguth, demands compensatory and consequential damages from the Defendant Allegheny County, as owner and operator of Cedar Brook Senior Center & Rehabilitation d/b/a Cedarbrook Nursing Homes, a skilled nursing facility in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

Respectfully submitted,

McELDREW YOUNG

*/s/ James J. McEldrew*
James J. McEldrew, III, Esquire
  Attorney I.D. No. 36411
Daniel Purtell, Esquire
  Attorney I.D. No. 310376
John J. Coyle, Esquire
  Attorney I.D. No. 312084
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
(215) 545-8805 (fax)
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

Dated: July 3, 2019

ENDORSE HERE

CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT

DATE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *

---

**The security features listed below, as well as those not listed, exceed industry guidelines.**

RS-77

**Security Features:**

- Hologram
  - Multi-dimensional foil seal used to check stock. Cannot be photocopied.

- Heat Sensitive Ink
  - Hold red image with fingers or breathe on it. The image will fade and reappear.

- True Watermark
  - Hold check to a light source to view. Cannot be photocopied.

- Visible Fibers
  - Visible fibers embedded in the paper.

- Invisible Fibers
  - Fibers in paper visible under ultraviolet light.

- Toner Adhesion Properties
  - Chemically/toner tends to tear top of fibers with a Damage is visible with alteration attempts.

- Chemically Sensitive Paper and Chemical Wash Detection Area
  - Stains or spots may appear if chemical alteration attempts are made.

- Microprinting
  - **MP** Small type in check border appears as dotted line when copied.

- High Resolution Warning Band
  - Text alerts handler to security features.

- Anti Copy Technology
  - Document made with technology to prevent most copiers from creating a usable copy.

- Original Document Back Pattern
  - Discourages cut-and-paste alterations.

® Padlock design is a certification mark of the Check Payment Systems Association

* F E D E R A L   R E S E R V E   B O A R D   O F   G O V E R N O R S   R E G.   C C